Filed 8/24/23  Ainsworth v. Boys & Girls Clubs CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRETT AINSWORTH,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>BOYS & GIRLS CLUBS OF SONOMA VALLEY et al.<br><br>      Defendants and Appellants. | A165472<br><br>(Sonoma County<br>Super. Ct. No. SCV-269901) |

Defendants Boys and Girls Clubs of Sonoma Valley (the Club) and Cary Snowden, the Club's president and chief executive officer, appeal from an order denying their motion to compel plaintiff Brett Ainsworth, a former employee, to arbitrate his employment-related and other claims.  Ainsworth signed an employment agreement with the Club; two years later, he signed an agreement with Oasis Outsourcing (Oasis), which performed human resources and payroll functions for the Club.  Both agreements contained arbitration clauses.  The trial court concluded the later-signed Oasis agreement supplanted the Club agreement and, because it was procedurally and substantively unconscionable, the Oasis agreement was unenforceable.  We disagree and reverse.

## BACKGROUND

In May 2014, the Club hired Ainsworth as the human resources and volunteer manager.  The day he was hired, Ainsworth signed a two-page

1

employment agreement containing an arbitration clause. The clause was separated from other paragraphs and titled in bold text, "**ARBITRATION OF DISPUTES**." It required Ainsworth and the Club to arbitrate any claim, controversy, or dispute arising between them. In addition, the parties had "the right to discovery in accordance with section 1283.05" of the Code of Civil Procedure, and the arbitrator must be a retired superior court judge or licensed attorney, or any other person mutually agreeable to the parties. Each party agreed to bear its own cost associated with arbitration — including attorney fees — while evenly splitting the cost of the arbitrator.

The arbitration clause was followed by language in which the Club and Ainsworth waived their right to a jury trial. It said, this "CONSTITUTES A WAIVER OF [THE PARTIES'] RIGHT TO A TRIAL BY JURY OF ANY MATTERS SUBJECT TO ARBITRATION UNDER THIS CONTRACT." The initials of Ainsworth and a Club representative appear immediately underneath the arbitration clause, indicating they understood the arbitration obligations.

Two years later, the Club hired Oasis to perform human resources and payroll functions for the Club. Ainsworth signed a one-page document titled "Employee Acknowledgements." It stated Oasis would pay Ainsworth, but the Club would still direct and control his "day-to-day work." In addition, the agreement stated the Club and Ainsworth were free to engage in contracts together but "Oasis is not responsible for these things or for anything promised [to Ainsworth] by anyone other than Oasis."

The Oasis agreement also contained an arbitration clause, requiring Ainsworth to arbitrate "any legal dispute with [the Club], Oasis, or any other party that may have an employment relationship [with Ainsworth]." Additionally, arbitration would be conducted by a neutral arbitrator who

2

would abide by federal rules of evidence, the applicable statutes of limitation, and who was authorized to grant the same remedies as a federal court "but no more." It continued, "My agreement to these terms controls any conflicting dispute resolution agreement, including one entered into after I sign this document, if the conflicting agreement would prevent a matter in which Oasis or an insurance policy issued to Oasis is involved from being arbitrated, does not provide a jury waiver (if the matter is not arbitrated), or does not include a class action waiver (if the matter is a class action or potential class action.)" Ainsworth's signature appears on the agreement — the Club's does not.

In March 2018, Snowden terminated Ainsworth's employment. More than three years later, Ainsworth filed a lawsuit seeking damages against defendants for various claims, including wrongful termination, employment discrimination, and retaliation in violation of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.).

Relying on the arbitration provisions in both the Club and Oasis agreements, defendants moved to compel arbitration and sought a stay of judicial proceedings. All of Ainsworth's claims, defendants argued, fell within the scope of the arbitration provisions. Defendants argued both agreements were enforceable and, if any provisions were unenforceable, they should be severed. In opposition, Ainsworth argued the arbitration agreement — not being specific as to which one — was invalid and unenforceable because it required "the employee to pay for cost and fees associated with arbitration." Relevant here, Ainsworth argued the provision was " 'unconscionably unilateral' " both in how it was written and defendants' delay in enforcement.

The trial court denied defendants' motion to compel arbitration. It determined both arbitration agreements were procedurally unconscionable as

3

facially adhesive contracts. The court also concluded the Oasis agreement featured other hallmarks of procedural unconscionability, such as the absence of a separate title, section, or place for parties to sign or initial acknowledging their understanding of the clause. The court determined the agreement was also substantively unconscionable. Among other things, the agreement limited recovery to remedies authorized under federal law — the court concluded those remedies may not be the same as remedies authorized under California law; the agreement failed to indicate whether discovery was allowed; and it failed to identify the neutral arbitration service or provide a copy of the rules. The court did not examine whether the Club agreement was substantively unconscionable. Finally, the court concluded the Oasis agreement was "part of a later employment agreement and appears to be the operative agreement, supplanting the earlier [Club] employment and arbitration agreements."

## DISCUSSION

Defendants urge us to reverse the denial of its motion to compel arbitration and stay judicial proceedings because the trial court erred by finding the Oasis arbitration agreement procedurally and substantively unconscionable.[1]

The framework for addressing these issues is as follows. General contract law principles govern whether parties entered a binding arbitration agreement. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development*

---

[1] To the extent Ainsworth suggests defendants waived their right to arbitrate, he fails satisfy the heavy burden of proof to establish waiver. (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 945 [waiver not lightly inferred].) Ainsworth filed his complaint in December 2021 and defendants filed their motion to compel arbitration two months later. Ainsworth does not demonstrate defendants unreasonably delayed their arbitration demand or that he suffered prejudice due to any alleged delay.

4

*(US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).)  The "existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation and enforcement of contracts generally." (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 357.)  It is "valid, enforceable and irrevocable" unless revocable on grounds that exist for any contract, such as unconscionability.  (Code Civ. Proc., § 1281; *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*Kho*); *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 445.)  The party seeking arbitration must demonstrate the existence of an agreement.  (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 172–173.)  Where the facts are not in dispute, we review de novo whether a valid agreement to arbitrate was formed.  (*Id.* at p. 173.)

Unconscionability includes both procedural and substantive elements. (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.)  Procedural unconscionability focuses on " ' "oppression" ' or ' "surprise" ' due to unequal bargaining power." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)  Substantive unconscionability examines the fairness of the terms of the agreement and whether it is " ' "overly harsh" ' or ' "one-sided." ' " (*Ibid.*)  Though an agreement to arbitrate is unenforceable if elements of both procedural and substantive unconscionability exist, they need not be present to the same degree.  (*Ibid.*)  Like a sliding scale, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  (*Ibid.*)  "While the scale is sliding, there must be some weight on each side."  (*Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 759.)

At the outset, defendants contend the trial court erred by finding the later-executed Oasis agreement controlled the dispute here because it "supplanted" the earlier Club agreement. We agree.

Generally, provisions of a later-executed agreement can supersede those of an earlier agreement *if they involve the same parties*. (E.g., *Frangipani v. Boecker* (1998) 64 Cal.App.4th 860, 863 ["[w]here there is an inconsistency between two agreements both of which are executed by all of the parties, the later contract supersedes the former"].) A substitution of a new obligation for an existing one — a novation — is made "by agreement and with the intent to extinguish the prior obligation." (*Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 431; Civ. Code, § 1530.) But it must clearly appear the parties intended to extinguish their earlier agreement. (*Wells Fargo*, at p. 432.)

Defendants did not sign the Oasis agreement. Moreover, nothing in that agreement clearly indicates the parties — Oasis and Ainsworth — intended it to bind the Club or to supersede the arbitration agreement signed by Ainsworth and the Club (even assuming they could do so). (Civ. Code, § 1639 ["When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible"]; *Grey v. American Management Services* (2012) 204 Cal.App.4th 803, 807, 809 [an integration clause "is a key factor in divining" whether the parties " 'intended their writing to serve as the exclusive embodiment of their agreement' "].) Indeed, the Oasis agreement expressly states the Club, not Oasis, directs and controls Ainsworth's daily work duties. And it further disavows the existence of any employment contract between Ainsworth and Oasis.

The statement in the Oasis agreement — that its arbitration obligations controlled if other agreements failed to include an arbitration

6

clause, a jury waiver if a matter is not arbitrated, or a class action waiver if the matter was a class action — does not demonstrate any intent to supersede the agreement into which the Club and Ainsworth entered. For one thing, the Club agreement contains an arbitration clause, jury waiver, and Ainsworth's claims do not involve a class action. Moreover, the plain language of the Oasis agreement acknowledges the continued existence of the Club agreement; it is that employment agreement between defendants and Ainsworth which controls here. Given that conclusion, we need not address whether the Oasis agreement was unconscionable.

Next, defendants argue the trial court erred in finding the Club agreement procedurally unconscionable. We agree with defendants — Ainsworth, as the party opposing arbitration, had the burden of proving the employment agreement is unconscionable. (*Pinnacle*, *supra*, 55 Cal.4th at p. 247.) He failed to do so.

Ordinarily, the procedural unconscionability analysis starts with determining whether an agreement is a contract of adhesion — a standardized contract, given by the party with superior bargaining power, " 'on a take-it-or-leave-it basis.' " (*Kho*, *supra*, 8 Cal.5th at p. 126.) An arbitration agreement "imposed as a condition of employment [is] typically adhesive" with few employees being able to decline employment because of an arbitration agreement. (*Ibid.*; *Lange v. Monster Energy Co.*, *supra*, 46 Cal.App.5th at p. 446.) But whether the contract is adhesive is not dispositive. (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704 (*Serpa*); *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1470.) Adhesion alone only establishes a low degree of procedural unconscionability. (*Davis v. Kozak* (2020) 53 Cal.App.5th 897, 907 (*Davis*).)

7

Instead, we consider whether there was oppression or surprise in the agreement. (*Davis*, *supra*, 53 Cal.App.5th at p. 906.) Oppression exists when a contract lacked any meaningful choice or negotiations. (*Pinnacle*, *supra*, 55 Cal.4th at p. 247.) Relevant factors include the circumstances surrounding contract negotiations, the signing of the contract, or the amount of time a party is given to consider the proposed contract. (*Kho*, *supra*, 8 Cal.5th at pp. 126–127.) Furthermore, we consider the pressure imposed on a party to sign, the length of the contract and the complexity of the challenged provision's language, the education and experience of the party, and whether an attorney assisted the employee in reviewing the document. (*Id*. at p. 127.)

Here, the trial court concluded that the Club agreement — on its face — was a contract of adhesion. Ainsworth, however, failed to provide any evidence the agreement was presented to him on a "take-it-or-leave-it basis" — that he would not be hired if he did not sign the form. (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1245; *McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 91.) The agreement did not state that Ainsworth's assent to its terms is " 'in consideration' " of his employment with the Club. (*Davis*, *supra*, 53 Cal.App.5th at p. 906.)

Moreover, Ainsworth failed to present any evidence of oppression. The record contains no evidence to illustrate the circumstances under which the Club agreement was signed or whether he was provided a meaningful opportunity to review or negotiate before signing. (*Kho*, *supra*, 8 Cal.5th at pp. 126–127.) Nor is there evidence the Club exerted any pressure on Ainsworth to sign or whether an attorney assisted Ainsworth in reviewing the agreements. (*Id*. at p. 127.) To the contrary, the only evidence in the record suggests there was no oppression in the signing of the Club

8

agreement. In his declaration, Ainsworth listed his educational background — including two graduate degrees and five professional certificates — which supports the finding that Ainsworth was educated enough to understand the agreement. (*Ibid*.) Moreover, the arbitration provision is short and written in plain language. (*Ibid*.)

Nor was there evidence of surprise, such as " ' " 'where the allegedly unconscionable provision is hidden within a prolix printed form.' " ' " (*Kho, supra*, 8 Cal.5th at p. 126.) Ainsworth does not argue — nor can he — the arbitration clause was hidden. The entire employment agreement is less than two pages long. (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1471 [finding no surprise where the arbitration provision was on the last page of a seven-page employment application].) Additionally, the arbitration clause was highlighted and contained in its own section titled "**ARBITRATION OF DISPUTES.**" (*Serafin v. Balco Properties Ltd., LLC, supra*, 235 Cal.App.4th at p. 179 [procedural unconscionability is limited where an arbitration provision is highlighted for the employee].) Finally, Ainsworth initialed immediately underneath the arbitration clause indicating he understood. In sum, Ainsworth has not met his burden of establishing the Club agreement is procedurally unconscionable beyond being standardized and on a preprinted form.

Finally, defendants argue that, to the extent the Club agreement contains substantively unconscionable provisions, the agreement is nonetheless enforceable because any such provisions can be severed. We agree.

Even assuming a minimal amount of procedural unconscionability in the Club agreement, we must find a high level of substantive unconscionability to render it unenforceable. (*Ajamian v. CantorCO2e, L.P.*

9

(2012) 203 Cal.App.4th 771, 796.) We do not. "In assessing substantive unconscionability, the paramount consideration is mutuality." (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 664.) It is insufficient for an agreement to slightly favor one party. (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.) Rather the agreement must be " 'so one-sided as to "shock the conscience." ' " (*Ibid.*) To avoid being substantively unconscionable, an arbitration agreement must meet the following minimum standards: it must provide for (1) a neutral arbitrator, (2) adequate discovery, (3) a written decision, (4) the same remedies available in court, and (5) it must limit the expenses an employee must pay in arbitration. (*Armendariz*, *supra*, 24 Cal.4th at p. 102.)

Here, the Club agreement requires both parties to arbitrate their claims. (*Armendariz*, *supra*, 24 Cal.4th at pp. 115–116.) The agreement further satisfies the neutral arbitration requirement. It mandates an arbitrator be "a retired Superior Court Judge or a licensed California attorney, or any other person mutually agreeable to the parties." Although the agreement does not explicitly provide the arbitrator must be neutral, it requires arbitration to proceed in accordance with the California Arbitration Act (Code Civ. Proc., § 1280 et seq.). That act provides, in relevant part, "[u]nless the arbitration agreement otherwise provides, . . . [t]he arbitration shall be by a single neutral arbitrator." (*Id.*, § 1282, subd. (a).) Because the agreement does not state otherwise, we conclude it requires the appointment of a neutral arbitrator.

Similarly, the agreement satisfies both the discovery and written decision rewards requirements. It states discovery will be allowed in accordance with Code of Civil Procedure section 1283.05, which has been deemed adequate for arbitration purposes. (*Armendariz*, *supra*, 24 Cal.4th at

10

pp. 105–106 [inferring "that when parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim"].) And while the agreement does not state a written decision will be offered, when an arbitration agreement "covers FEHA claims and is silent as to the minimal elements of fairness required by *Armendariz*, courts will infer those terms." (*Iyere v. Wise Auto Group*, *supra*, 87 Cal.App.5th at p. 761.) Since the arbitration clause covers "wrongful termination or harassment, and any type of discrimination" and nothing in the agreement precludes issuing a written decision, we interpret it to require a written decision.

Defendants, however, concede there are two provisions in the Club agreement that are substantively unconscionable; we accept their concession. First, the agreement states "[e]ach party shall bear its own respective costs and expense, including attorney fees," regardless of the type of action brought. This limits Ainsworth's ability to potentially receive an award of attorney fees, an award expressly allowed under FEHA. (Gov. Code, § 12965, subd. (c)(6) [authorizing the court to award the prevailing party "reasonable attorney's fees and costs, including expert witness fees"].) Denying an employee an award of attorney's fees is substantively unconscionable. (*Serpa*, *supra*, 215 Cal.App.4th at pp. 709–710; *Armendariz*, *supra*, 24 Cal.4th at pp. 103–104.)

Second, the provision requiring Ainsworth to pay one-half of the arbitration costs is unconscionable. When mandatory arbitration is a condition of employment, the arbitration agreement generally cannot require employees "to bear any *type* of expense that the employee would not be required to bear" if they brought the action in court. (*Armendariz*, *supra*, 24 Cal.4th at pp. 110–111.) This ensures "that employees bringing FEHA

11

claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer." (*Id*. at p. 111.)

Concluding these provisions are substantively unconscionable does not require voiding the entire arbitration agreement. Courts have discretion to sever unconscionable clauses and enforce the remainder of the contract. (Civ. Code, § 1670.5, subd. (a); *Armendariz, supra*, 24 Cal.4th at p. 124.) Indeed, there is a strong preference for courts to sever unconscionable provisions unless unconscionability permeates the entire agreement. (*De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, 492.) Specifically, examining the various purposes of the contract, if "the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." (*Armendariz*, at p. 124.) But if "the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Ibid*.)

Severing the unconscionable attorney fees and arbitration cost provisions here is appropriate. Both can be removed without having to reform the Club agreement by augmenting it with additional terms, indicating unconscionability does not permeate the agreement. (*Armendariz, supra*, 24 Cal.4th at pp. 125–126.) Indeed, courts have severed provisions limiting attorney fees awards — a restriction that has been described as collateral to the main purpose of the agreement — enforcing the remainder of the agreement. (*Serpa, supra*, 215 Cal.App.4th at p. 711.) Doing so here results in each party being responsible for its own attorney fees unless FEHA or other statutes compel a different result. (*Serpa*, at p. 710, fn. 8; *Iyere v. Wise Auto Group, supra*, 87 Cal.App.5th at p. 761 [inferring terms where

12

agreement is silent].) Similarly, provisions requiring employees to pay the costs of arbitration have also been severed. (*McManus v. CIBC World Markets Corp.*, *supra*, 109 Cal.App.4th at pp. 101–102.) By striking that provision, the Club agreement is silent on costs, thus permitting a court to infer the employer must pay arbitration costs. (*Armendariz*, at p. 113.)

To the extent Ainsworth contends, relying on *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, one substantively unconscionable provision alone renders the entire agreement unenforceable, we disagree. While courts may indeed find unconscionability permeates an agreement when there is more than one unconscionable provision and refuse to enforce it, those are not the circumstances here. (*Ramirez v. Charter Communications, Inc.* (2022) 75 Cal.App.5th 365, 386; *Lange v. Monster Energy Co.*, *supra*, 46 Cal.App.5th at p. 454.) Both the attorney fees and arbitration cost provisions are collateral to the main purpose of the employment agreement and less egregious than other arbitration agreements containing, for example, unconscionably unilateral arbitration obligations. (Compare with *Armendariz*, *supra*, 24 Cal.4th at p. 124 [severance inappropriate when the lack of mutuality permeated the agreement]; *Davis*, *supra*, 53 Cal.App.5th at p. 918 [same]; *Martinez*, at pp. 115, 119 [the cost-splitting provision, *in addition to*, the lack of mutuality of the arbitration provisions, and a six-month statute of limitation provision that unlawfully restricted an employee's ability to vindicate rights indicated a " 'systemic effort to impose arbitration on an employee . . . as an inferior forum that works to the employer's advantage' "].) The agreement does not contain such unilateral arbitration obligations. And severing two sentences in the arbitration clause regarding costs and attorney fees cures the substantive unconscionability. (*Armendariz*, at p. 125.)

13

Given the Club agreement's minor, if any, procedural unconscionability and the fact that substantively unconscionable provisions are collateral to the purpose of the agreement, the interests of justice are best served by severing the unconscionable provisions and enforcing the remaining provisions.

## DISPOSITION

The order denying defendants' motion to compel arbitration and to stay proceedings is reversed. On remand, the trial court shall vacate its order denying the motion, strike the limitation on the attorney fees provision and the arbitration cost provision, and enforce the remaining provisions. In the interests of justice, the parties are to bear their own costs.

_____

Rodríguez, J.

WE CONCUR:

_____

Fujisaki, Acting P. J.

_____

Petrou, J.

A165472